# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:25-CR-10273-NMG |
| | ) | |
| ZHENXING WANG | ) | |
| | ) | |
| a/k/a "Danny Wang" | ) | |
| | ) | |

## DEFENDANT ZHENXING WANG'S SENTENCING MEMO

Zhenxing Wang ("Mr. Wang") through undersigned counsel, respectfully files this Sentencing Memo in advance of his sentencing hearing set for April 14, 2026 at 11:00 a.m.

## Preliminary Statement

Mr. Wang comes before this Court remorseful and repentant, having accepted full responsibility for his actions. He acknowledges that when recruited by his friend and coconspirator Kejia Wang ("Kejia") to make money by joining a scheme to defraud by facilitating remote access to U.S. companies through laptops hosted at Mr. Wang's home, he made a terrible decision that he will pay for the rest of his life.

But Mr. Wang's life cannot be defined by that terrible choice. He has otherwise led a law-abiding life, working hard to fulfill his parents' dream of

1

a better life for him here in the United States.  Given his prompt acceptance of responsibility and his otherwise law-abiding life, Mr. Wang respectfully requests that the Court sentence him to 78 months imprisonment, a sentence at the very low-end of the guidelines as calculated in the Presentence Report ("PSR").  Mr. Wang respectfully submits that such a sentence is sufficient but not greater than necessary to effectuate the goals of sentencing set forth in Title 18, United States Code, Section 3553(a).

**<u>Procedural History and Sentencing Guidelines Analysis</u>**

The parties entered into a plea agreement on December 9, 2025.  *See* Doc. 29.  Pursuant to that agreement, Mr. Wang agreed to plead guilty to Count One (Conspiracy to Commit Wire Fraud and Mail Fraud) and Count Two (Conspiracy to Commit Money Laundering).  The government agreed to dismiss Counts Three and Four of the Indictment.

Consistent with the plea agreement, Mr. Wang does not move for a departure from the applicable guideline range and does not move for a non-guideline sentence.  Mr. Wang submits that there are no legal questions not adequately addressed in the PSR or not addressed at all.  Mr. Wang further submits that there are no factual issues that require an evidentiary hearing.

The parties agreed in the Plea Agreement that Mr. Wang's Total Offense Level was 28, based, in part, on an 18-level increase under U.S.S.G.

§ 2B1.1(b)(1)(J) because the value of the laundered funds exceeded $3,500,000. Mr. Wang's offense level is decreased by 3-levels because he fully accepted responsibility for his offenses pursuant to U.S.S.G. § 2E1.1. Last, Mr. Wang is eligible for a zero criminal history adjustment pursuant to U.S.S.G. § 4C1.1.

Post-*Booker*, the Supreme Court has directed that a district court should begin its analysis by correctly calculating the defendant's Sentencing Guidelines range, though that range is not binding on the Court. *See, e.g., Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").

The Probation Office ("Probation") has calculated Mr. Wang's Total Offense Level and Advisory Guidelines consistent with the parties' agreement: Total Offense Level of 28 which results in an advisory Guidelines range of 78-97 months' incarceration. Mr. Wang agrees with that calculation.

## <u>Grounds for a Low-End of the Guidelines Sentence</u>

Title 18, United States Code, Section 3553(a) exhaustively identifies the factors that the Court must consider in imposing a sentence.  Section 3553(a) "is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle.  That tenet...instructs district courts to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing."  *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008)(quoting 18 U.S.C. § 3553(a)).  Ultimately, a district court "should...consider all the relevant [§ 3553(a)] factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing."  *Id.* [emphasis added].

Mr. Wang submits that a sentence of 78 months imprisonment would meet all of the goals set forth in Title 18, United States Code, Section 3553(a).

### A. The History and Characteristics of Mr. Wang

As more fully set forth in the PSR, Mr. Wang is 39 years old, and was born in Shenyang, China. Mr. Wang is an only child and raised by his parents in a low-income home.  While in China, Mr. Wang graduated from high school and attended some college, but he did not obtain a college degree and largely struggled in school.

4

In 2008, with the support and encouragement of his parents, Mr. Wang came to the United States to find a better life. Mr. Wang first attended school in New Hampshire to learn English but struggled and did not complete schooling. It was in New Hampshire that Mr. Wang met and befriended the leader of the instant scheme to defraud, Kejia Wang ("Kejia"). Kejia was successful, married and had a family, and obtained gainful employment in New York. In contrast, Mr. Wang struggled to succeed, never obtained a degree or family, and largely worked menial jobs as an Uber driver and in nail salons in and around New Jersey. In many ways, Mr. Wang admired the success of Kejia, who ultimately recruited Mr. Wang into this scheme.

The center of Mr. Wang's life has always been his parents, who came to the United States to live with their son in or around 2024. Mr. Wang's parents lived with Mr. Wang and tried to help him succeed here in the United States. Sadly, during the pendency of this investigation, Mr. Wang's father was diagnosed with terminal lung cancer, and chose to return to China so that Mr. Wang's mother would have more support in caring for her husband. Mr. Wang's father died shortly after returning to China, and Mr. Wang was unable to attend his funeral because of the pendency of this matter. Mr.

Wang's mother remains in China and has expressed her love and support for Mr. Wang, and the hope that the Court will show Mr. Wang mercy.

Mr. Wang will make a statement at his sentencing, expressing his deep remorse for his conduct and asking for this Court's mercy at sentencing. Mr. Wang has never been in trouble before and promises to rebuild his life here in the United States as a law-abiding citizen. While Mr. Wang grew up in loving home with the support of his parents, Mr. Wang has largely struggled to succeed academically or professionally, and his future is grim. Mr. Wang recognizes he must be punished for his conduct that brought him before this Court but submits that his personal history and characteristics warrants a sentence at the low-end of the guidelines of 78 months imprisonment.

**B. The Nature and Circumstances of Mr. Wang's Offense**

18 U.S.C. § 3553(a)(1) directs the Court to consider the "nature and circumstances of the offense" in determining a reasonable sentence. There is no question Mr. Wang stands before the Court convicted of a serious offense—he betrayed the trust of numerous companies here in the United States and participated in a scheme to defraud them. Mr. Wang is ashamed of his conduct, and deeply apologetic to all those involved in this case for his behavior. Yet, it is important to describe some of the facts surrounding this

case, because those facts may help the Court understand how Mr. Wang came to make the terrible decision he made here.

As noted herein, when Mr. Wang first came to the United States in 2008 and tried to learn English in New Hampshire, one of the first people Mr. Wang met and befriended was his codefendant and coconspirator, Kejia. Unlike Mr. Wang, who struggled in school, worked largely menial jobs and had no wife or children, Kejia was successful in school, had a family, and was successful in business here in the United States. Mr. Wang respected Kejia's success and considered him a dear friend.

Before Mr. Wang ever got involved in the instant conspiracy, Kejia persuaded Mr. Wang to take out a credit card loan and use the remainder of his savings to invest in a speculative investment opportunity that Kejia assured Mr. Wang would be a success. Unfortunately for Mr. Wang, the investment opportunity failed, and Mr. Wang lost approximately $50,000 from this investment.

It was after Mr. Wang lost this money that Kejia recruited Mr. Wang to join the instant scheme to defraud as an easy way for Mr. Wang to make up Mr. Wang's losses from this investment. Indeed, it was Kejia who helped Mr. Wang set up the website at issue in this case; it was Kejia who delivered the first computers to Mr. Wang; it was Kejia who helped Mr. Wang facilitate

remote access to these computers; and it was Kejia who helped set up the various financial accounts through which victims funds flowed.  At all times Mr. Wang was involved in this scheme, he took direction from Kejia.  Unlike Kejia, who was a leader and organizer of the scheme to defraud and recruited and worked with the other individuals charged in this case, Mr. Wang did not know any of the other individuals charged in this case and did not recruit anyone to participate.

Mr. Wang's relationship with Kejia, who recruited him to participate in this scheme, is not offered as a form of mitigation or to discount liability for Mr. Wang's conduct.  Instead, Mr. Wang provides this information to answer the question that often arises in cases involving individuals like Mr. Wang, who have otherwise lived an exemplary life:  why do this?  For Mr. Wang, he was recruited into this scheme by Kejia, who in many ways he looked up to and who advised Mr. Wang that it was an easy way to make up the money Mr. Wang already lost by working with Kejia.  Mr. Wang deeply regrets joining Kejia in this scheme and knows that he will pay dearly for his involvement at sentencing.  Mr. Wang submits that in light of this information about how he got involved in this scheme, a sentence of 78 months imprisonment adequately reflects the seriousness of his offense conduct.

**C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment.**

Although Wang's conduct should not be excused or minimized in any way, a sentence of 78 months is sufficient to provide just punishment. Indeed, Mr. Wang is acutely aware of the consequences he has already incurred and the pain he has caused himself and his family. Mr. Wang has lost various civil rights and suffered the shame and embarrassment connected with becoming a convicted felon. The personal, emotional, and professional toll this case has taken on Mr. Wang's life cannot be understated, as he has lost his father, his mother has returned to China, and he remains in the United States alone, without family. In many ways, punishment has already been meted out for Mr. Wang, and a sentence of imprisonment at the top end of the sentencing guidelines is unnecessary to reflect the seriousness of the offense, promote respect for the law and provide for just punishment.

**D. The Need for the Sentence to Deter Crime and Protect the Public from Further Crimes of the Defendant.**

Regarding the need to deter criminal conduct, Mr. Wang stands before the Court a broken man, facing an uncertain future because of his status as a convicted felon. The public attention this case has generated, and the other collateral consequences suffered by Mr. Wang as a result of

his conduct will act as a deterrent message to other individuals who would consider betraying the trust of others and joining a scheme to defraud. Serving a custodial sentence at the top end of the sentencing guidelines will not significantly increase the deterrent effect.

Regarding the need to protect the public from further crimes of the defendant, as noted above, Mr. Wang has zero criminal history and has had no problem following the directions of the Probation Office while awaiting sentencing. Mr. Wang has no history or indication of violence or any other dangerous or unlawful behavior.  Thus, a sentence of imprisonment at the top end of the guideline range is unnecessary to protect the public from Mr. Wang and will not serve to advance this goal.

### E. The Need to Avoid Unwarranted Sentence Disparity

18 U.S.C. § 3553(a)(6) directs the Court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in determining a reasonable sentence.  Mr. Wang submits that looking at cases with similar facts, as well as the prosecution of codefendant Kejia, a sentence of 78 months would best serve the goal of avoiding unwarranted sentencing disparity.

In the government's sentencing memorandum, the government cites to five prior cases on record with similar facts to the instant offense and

recommends that Mr. Wang receive a sentence of 96 months imprisonment, a sentence at the very top of the guideline range. *See* Doc. 34 at 14-15. Yet, in those five cases, only one defendant, Christina Chapman, received a sentence close to the sentence the government recommends for Mr. Wang; the remaining defendants received sentences of 15 months, 12 months and probation. Moreover, a close review of the sentencing transcript for Ms. Chapman reveals that the Court found, among other things, that Chapman was in the business of laundering funds and a leader of criminal activity with an advisory guideline range of 262-372 months. *See* Doc. 34-1 at 6-7. Her conduct as described in the transcript, while similar to Wang, was far more serious and yet she only received a sentence of 102 months. Mr. Wang respectfully submits that using Ms. Chapman as an example, a sentence of 78 months is sufficient but not greater than necessary to meet the statutory goals of sentencing.

Mr. Wang notes that the leader and organizer of the instant criminal activity, was Kejia, who is scheduled for sentencing before this Court on April 15, 2026, the day after Mr. Wang's sentencing. *See United States v. Kejia Wang*, 1:25-CR-10274-NMG-1 at Doc. 27. Pursuant to Kejia's plea agreement, Kejia agreed that he was a leader of the scheme to defraud, profited more than Mr. Wang, recruited others to join the conspiracy, and

11

faces a guidelines range undoubtedly higher than Mr. Wang, and yet the government agreed to recommend a sentence of just 108-120 months for Kejia.   *Id.* at Doc. 11 at 3-4.  Mr. Wang respectfully submits that if Kejia's recommended sentence as the leader of this scheme falls within the range agreed to by the government in Kejia's plea agreement, a sentence of 78 months for Mr. Wang would meet the goal of avoiding unwarranted sentencing disparity.

### F. A Fine is Not Appropriate Here

In light of the forfeiture the government is seeking in this case, which consists of a judgement in the amount of $200,000, and the potential restitution at issue in this case, Mr. Wang submits that any additional fine would be excessive.  Mr. Wang's net monthly cash flow is minimal, and any additional income he earns will be paid toward restitution and forfeiture. Imposing a fine on top of the substantial forfeiture and restitution Wang owe is not necessary for deterrence purposes.

### G. Self-Surrender to the Bureau of Prisons Request

Mr. Wang respectfully requests that he be permitted to self-surrender at the institution designated by the Bureau of Prisons six weeks from the date of imposition of sentence.

**H. Facility Designation Request**

Mr. Wang respectfully requests that he be designated to the minimum security satellite camp at FCI Lewisburg.

## Conclusion

Mr. Wang stands before this Court deeply remorseful for his criminal conduct and accepts full responsibility for his behavior.  Yet, his actions that are the subject of this case do not define him as a person and are not a true reflection of the good person he is.  As discussed in more detail throughout this Memo and the PSR, the conduct at issue represents an aberration in what has otherwise been a law-abiding life. Mr. Wang implores this Court to consider all of the evidence about him, and not just the allegations in this case, and sentence him to a term of imprisonment of 78 months.

Date:  April 9, 2026

/s Brian T. Rafferty, Esq.
Brian T. Rafferty*
Georgia Bar No. 311903
*Appearing *Pro Hac Vice*
RAFFERTY LAW, LLC
1575 Johnson Road
Atlanta, Georgia 30306
(912)658-0912
brian@raffertylawfirm.com

13

/s/ Jason Benzaken
Jason Benzaken, Esq.
Benzaken, Maguire, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 658869
jbenzaken@bmswlaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served the foregoing Notice of Appearance on all parties in this case in accordance with the notice of electronic filing using the CM/ECF system, which was generated as a result of the electronic filing with this Court.

This 9th day of April, 2026.

/s/Brian T. Rafferty, Esq.
Brian T. Rafferty, Esq.

14